**IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| LARRY HAMMER, ET AL., )<br>)<br>Plaintiffs, )<br>)<br>vs. )<br>)<br>STATE FARM FIRE & CASUALTY CO., )<br>)<br>Defendant. ) | NO. CIV-11-0157-HE |

### ORDER

Plaintiffs Larry and Renay Hammer sued defendant State Farm Fire and Casualty Company ("State Farm") asserting claims for breach of contract and bad faith arising out of a dispute regarding damage to plaintiffs' home following a hail storm. Defendant moved for summary judgment, which is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). The court has viewed the evidence and any reasonable inferences that might be drawn from it in the light most favorable to plaintiffs, the nonmoving party, and concludes that defendant's motion should be granted in part and denied in part.

Background

Plaintiffs are the named insureds on State Farm Homeowners Policy number 36-F646-606 covering plaintiffs' Oklahoma City home. The policy carries Coverage A limits of $170,941.00. The pertinent provisions of the Coverage A policy are as follows:

> (1) until actual repair or replacement is completed, we will pay only the actual cash value at the time of the loss of the damaged part of the property up to the applicable limit of liability shown in the Declarations, not to exceed the cost to repair or replace the damaged part of the property;

> (2) when the repair or replacement is actually completed, we will pay the covered additional amount you actually and necessarily spend to repair or replace the damaged part of the property, or an amount up to the applicable limit of liability shown in the Declarations, whichever is less;
>
> (3) to receive any additional payments on a replacement cost basis, you must complete the actual repair or replacement of the damaged part of the property within two years after the date of loss, and notify us within 30 days after the work has been completed.

[Doc. #106 at 5]. As discussed in a prior order, both parties acknowledge that under the type of policy involved in this case, defendant was obliged to tender to plaintiffs at the time of the initial assessment of damage an amount representing the actual cash value ("ACV") of the loss [Doc. #115 at 5]. This amount represents those costs reasonably likely to be incurred in replacing the covered loss. *See* Branch v. Farmers Ins. Co., Inc., 55 P.3d 1023, 1027 (Okla. 2002). The ACV amount is owed regardless of whether such repairs are made.

On May 16, 2010, plaintiffs' home sustained damage in a wind and hail storm. The plaintiffs reported their claim to State Farm on May 17, 2010. State Farm made initial contact with plaintiffs on May 21, 2010, and the following day scheduled an inspection for June 13, 2010. On June 13th, State Farm's claim representative, Jason Willis, inspected the home with the plaintiffs. Willis determined that the roof was a total loss and estimated for its replacement. Willis' estimate also noted hail damage to the gutters, wood siding, windows, fascia, a screen, the A/C unit blade guard, a shed, and a shared fence. Willis determined there was no interior damage to the home. The estimate totaled $17,001.55, from which a recoverable depreciation amount of $4,038.19 and a deductible amount of $1,706.00

were subtracted, resulting in an ACV settlement amount payable to plaintiffs of $11,257.36.

The claims representative did not include an amount for General Contractor's Overhead and Profit ("GCOP") in the estimate, which plaintiffs contend should be an additional 20%. Willis testified that he did not include GCOP because he did not believe the damages to the property were sufficiently complex to warrant the use of a general contractor and that he took into consideration "the complexity of the repairs, whether the work of multiple trades people would have to be coordinated, as well as the number of trades involved" [Doc #106 at 7].[1]

It is undisputed that an explanation of GCOP benefits was provided at some point, but there is a dispute as to when it was provided.[2] The explanation, which was in writing, stated,

> Depending upon the complexity of your repair, our estimate may or may not include an allowance for general contractor's overhead and profit. If you have questions regarding general contractor's overhead and profit and whether general contractor services are appropriate for your loss, please contact your claim representative before proceeding with repairs

[Doc. #106 at 6].

---

[1]Plaintiffs' brief states that they "deny the validity" of Willis' professed reasoning, but have presented no evidence to suggest that those were not matters considered by him [Doc. #123 at 6].

[2]Defendant offered evidence that the estimate it gave to Mrs. Hammer on June 13th included this paragraph [Doc. #106, Ex. 3 at SF0044]. It also submitted evidence that it faxed and mailed this estimate, which included the explanation of GCOP, after plaintiffs asked for a copy on August 3, 2010 [Doc. #106, Ex. 2 at SF0005]. However, Renay Hammer in her deposition testimony denies receiving anything with this explanation of GCOP before B&C Exteriors began the repairs to plaintiffs' home [Doc. #123, Ex. 1 at 121-23, 137, 171-72].

Plaintiffs hired B&C Exteriors to repair their property, but did not hire them as a "general contractor" nor were they paid as such. Plaintiff Renay Hammer's testimony was that plaintiffs didn't want to "be placed in a position of paying more to repair the property than was received from State Farm," and she indicates she gave a copy of her estimate to the B&C Exteriors representative [Doc. #123 at 12]. She further indicates that plaintiffs viewed the work ultimately done as incomplete and unsatisfactory. B&C Exteriors did not charge the plaintiffs for overhead and profit, and there is evidence it did not view it as necessary or appropriate. On September 11, 2010, a State Farm claim representative noted in the claim file that the insurer had received invoices from B&C Exteriors for the work to plaintiffs' home and that, on the same date, an additional payment of $3,499.20 was made to plaintiffs representing the release of recoverable depreciation.

The evidence indicates that on November 13, 2010, Renay Hammer called State Farm wanting to know why she had not been paid overhead and profit. She indicates she was told that it was because there was no interior damage. The claim file indicates that the explanation was that each claim is handled on its merits, on a case-by-case basis, and that there was not sufficient complexity or coordination involved in plaintiff's claim to warrant payment of GCOP. On November 20, 2010, Mrs. Hammer again inquired about GCOP. The claims file indicates she was told her that their contractor would need to provide additional documentation for the insurer to consider payment of GCOP.

Defendant's internal guidelines state that, in considering whether to include GCOP, the claims representative should use "good judgment on each loss according to the

4

complexity of the repair, the degree to which trades require coordination, and the number of trades involved" [Doc. #123, Ex. 2 at 6]. There is evidence that more than six separate trade skills would be involved in repairing the damage to plaintiffs' home. Plaintiffs' expert's testimony is that, due to the nature of the damage, coordination of the trade skills would be reasonably likely to be required. Plaintiffs' expert also testified that certain of plaintiffs' neighbors sustained substantially similar damage in the storm and received GCOP.

## Discussion

A. Breach of Contract claim.

Plaintiffs contend that under their homeowner's insurance policy defendant should have included 20% for GCOP at the time of, and as part of, the initial estimate. Under the type of policy involved in this case, defendant was obliged to tender to plaintiffs at the time of the initial assessment of damage an amount representing the actual cash value of the loss. This amount represents those costs reasonably likely to be incurred in replacing the covered loss. *See* Branch, 55 P.3d at 1027.

There is a dispute of material fact as to whether it was reasonably likely that the services of a general contractor would be required. Evidence that plaintiffs did not ultimately use a general contractor, while relevant, is not dispositive of the question of whether, at the time of the initial estimate, it was reasonably likely such costs would be incurred. There is evidence here, including the nature and type of repairs, sufficient to create a justiciable question in that regard. A jury will have to determine whether a general contractor was "reasonably likely" to be needed in repairing the damage to plaintiffs' home and whether

GCOP should therefore have been paid as part of the actual cash value settlement amount. Summary judgment on the contract claim is not warranted.

B. Duty of Good Faith and Fair Dealing

Plaintiffs contend that defendant's denial of GCOP in plaintiffs' ACV payment was in bad faith, breaching the insurer's duty of good faith and fair dealing with the insured. The tort of bad faith was first recognized by the Oklahoma Supreme Court in Christian v. American Home Assur. Co., 577 P.2d 899 (Okla. 1978). It arises from the insurer's implied duty to deal fairly and act in good faith with its insured. Southern Hospitality, Inc. v. Zurich Am. Ins. Co., 393 F.3d 1137, 1142 (10th Cir. 2004). The duty is not breached if the insurer refuses to pay a claim or litigates a dispute with its insured if there is a legitimate dispute as to coverage or the amount of the claim, and the insurer's position is reasonable and legitimate. *Id.* Otherwise put, "[t]he insurer will not be liable for the tort of bad faith if it 'had a good faith belief, at the time its performance was requested, that it had a justifiable reason for withholding payment under the policy.'" Oulds v. Principal Mut. Life Ins. Co., 6 F.3d 1431, 1436 (10th Cir. 1993) (quoting McCoy v. Oklahoma Farm Bureau Mut. Ins. Co., 841 P.2d 568, 572 (Okla. 1992)). Therefore, to establish bad faith, "the insured must present evidence from which a reasonable jury could conclude that the insurer did not have a reasonable good faith belief for withholding payment of the insured's claim." Oulds, 6 F.3d at 1436. State Farm's actions are evaluated in light of the facts it knew or should have known at the time it was asked to perform its contractual obligation. *Id.* 3d at 1437.

The parties' submissions make clear there was at least a legitimate dispute as to

whether GCOP should be paid on plaintiffs' claim.  The undisputed facts indicate the claims representative made his determination based upon a consideration of several factors, including "the complexity of the repairs, whether the work of multiple trades people would have to be coordinated, as well as the number of trades involved," in line with State Farm's internal guidelines [Doc #106 at 7].  Willis testified that he did not include GCOP because he did not believe the damages to the property were complex enough in light of these considerations to warrant GCOP.  Plaintiffs offer no evidence from which a reasonable jury could conclude that defendant did not have a "reasonable good faith belief" that it had a "justifiable reason for withholding payment" of GCOP.[3]  Oulds 6 F.3d at 1436.

From the outset of the case, plaintiffs' bad faith claim has relied primarily on the theory that defendant's failure to allow GCOP as a part of the initial estimate violated what they term the "three trade rule."  The court has previously excluded the expert testimony upon which plaintiffs relied to establish this "rule" [Doc. #115] and there is therefore no evidence from which the jury could conclude that such a rule or standard exists or that defendant violated it.  As discussed in the prior order, the testimony of the former State Farm

---

[3]*Plaintiffs contend that defendant violated Oklahoma's Unfair Claims Settlement Practices Act because plaintiffs did not receive an explanation of GCOP until after they began repairs. 36 Okla. Stat. § 1250.3.  However, an insurer's violation of that Act does not necessarily give rise to an inference of bad faith. Bannister v. State Farm Mut. Auto. Ins. Co., — F.3d —, 2012 WL 3834633, at *8, n.11 (10th Cir. Sept. 5, 2012) (citing Beers v. Hillory, 241 P.3d 285, 294 (Okla. Civ. App. 2010)).  The court in Beers recognized that "a violation of the Act does not necessarily establish bad faith. An insurer may carelessly fail to perform some duty required by the statute with such frequency to warrant administrative sanction, but that does not establish more than negligent conduct in any individual case." Beers, 241 P.3d at 294.  Even assuming defendant's explanation of GCOP was sent and received later than it should have been, that fact would not support an inference of bad faith in the circumstances existing here.*

employee, Mr. Dickson, is not to the contrary.[4] His testimony was to the effect that the nature and extent of the damage must be considered along with the number of trades, and there is no evidence here that defendant did anything other than that. As noted above, there is a factual dispute as to whether the need for a general contractor was reasonably likely at the outset, but there is nothing here to suggest that the dispute was other than a reasonable one under the circumstances. An insurer

> clearly has the right to resist payment and litigate any claim to which the insurer has a *reasonable defense*. 'Resort to a judicial forum is not *per se* bad faith or unfair dealing on the part of the insurer regardless of the outcome of the suit.'

Buzzard v. Farmers Ins. Co., Inc., 824 P.2d 1105, 1109 (Okla. 1991) (quoting Manis v. Hartford Fire Ins. Co., 681 P.2d 760, 761 (Okla. 1984).

It is unclear whether plaintiffs seek to support their bad faith claim here on the basis of an inadequate investigation.[5] However, no basis for avoiding summary judgment on that basis is present here. In determining whether to pay a claim, the insurer must conduct an investigation "reasonably appropriate under the circumstances." Willis v. Midland Risk Ins. Co., 42 F.3d 607, 612 (10th Cir. 1994) (quoting Buzzard, 824 P.2d at 1109). To succeed on bad faith based on an inadequate investigation theory, "the insured must make a showing that

---

[4]*Mr. Dickson was not offered as an expert witness and it is unlikely he would be allowed, as a fact witness, to opine as to the existence of a rule or industry standard anyway. However, for present purposes, it suffices to say that, even if his testimony is evaluated as that of an expert, it does not provide support for the existence of a "rule," or practice of State Farm, the violation of which would suggest bad faith.*

[5]*The complaint made such a suggestion, but plaintiffs' summary judgment response does not appear to contest, at least directly, the adequacy of the investigation of the claim.*

material facts were overlooked or that a more thorough investigation would have produced relevant information." Sellman v. AMEX Assur. Co., 274 F. App'x 655, 658 (10th Cir. 2008) (unpublished) (quoting Timberlake Constr. Co. v. U.S. Fidelity & Guar. Co., 71 F.3d 335, 345 (10th Cir. 1995)).  Plaintiffs have presented no evidence that defendant conducted an unreasonable investigation rising to the level of bad faith.  The undisputed evidence shows that defendant contacted plaintiffs regarding their claim within a week and that defendant's claims representative did a complete investigation of the home at the time arranged with the plaintiffs and less than a month after the hail storm.  As plaintiffs have not shown what other evidence State Farm should have found and considered in making its determination regarding GCOP, plaintiffs have not demonstrated the existence of a material fact dispute as to the reasonableness of defendant's investigation.[6]

## Conclusion

For the reasons stated, defendant's motion for summary judgment is **DENIED** with respect to plaintiffs' breach of contract claim and **GRANTED** with respect to plaintiffs' bad faith claim.

---

[6]*As part of their argument, plaintiffs appear to assert that defendant didn't take into consideration plaintiffs' personal circumstances when deciding not to include GCOP [Doc. #123 at 11]. However, plaintiffs have offered no evidence to controvert the deposition testimony of Jason Willis that he considered whether or not plaintiffs would be "able enough" in his analysis [Doc. #123, Ex. 10 at 53-54].*

9

**IT IS SO ORDERED**.

Dated this 12th day of September, 2012.

*/s/ Joe Heaton*
JOE HEATON
UNITED STATES DISTRICT JUDGE